Charles C. Sipos, Bar No. 348801
CSipos@perkinscoie.com
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

*Attorney for Defendant Costco Wholesale Corporation*

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIANCA JOHNSTON AND ANATASIA CHERNOV, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COSTCO WHOLESALE CORPORATION and DOES 1-10,<br><br>Defendant. | Case No. 3:26-cv-00403-AJB-AHG<br><br>**DEFENDANT COSTCO WHOLESALE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Judge: Hon. Anthony J. Battaglia<br>Courtroom: 4A<br>Date: August 13, 2026<br>Time: 10:00 AM |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.   FACTUAL BACKGROUND ...................................................................2

    A.    Costco sells accurately labeled fully cooked and seasoned chicken. .........................................................................................2

    B.    Plaintiffs allege the "No Preservatives" statement is false due to the ingredients sodium phosphate and carrageenan...........................4

    C.    Plaintiffs allege the "No Preservatives" statement violates Washington and California consumer protection laws. ........................6

III.   ARGUMENT .........................................................................................7

    A.    Legal Standard ...........................................................................7

        1.    Dismissal under Rule 12(b)(6) ........................................7

        2.    Dismissal under Rule 12(b)(1) ........................................8

    B.    The Amended Complaint does not plausibly allege a "reasonable consumer" would be deceived. ........................................9

    C.    The Amended Complaint does not plausibly allege that Plaintiffs paid any cognizable "price premium." ...............................13

    D.    Plaintiffs' allegations fail to satisfy the heightened pleading standards of Rule 9(b). .......................................................................16

    E.    The Amended Complaint's references to Costco's website should be dismissed based on lack of causation or reliance..............17

    F.    Plaintiffs do not have Article III standing to seek injunctive relief because they are unlikely to be misled in the future. ...............18

    G.    The Amended Complaint should be dismissed with prejudice. ........19

IV.   CONCLUSION ....................................................................................20

CASE NO. 3:26-CV-00403-AJB-AHG
COSTCO'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alamilla v. Hain Celestial Group, Inc.*,
    30 F.Supp.3d 943 (N.D. Cal. 2014)..................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................7, 10, 16

*Babaian v. Dunkin' Brands Grp., Inc.*,
    LACV 17-4890, 2018 WL 11445614 (C.D. Cal. Feb. 16, 2018).......................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................7, 16

*Blackburn v. Etsy, Inc.*,
    CV 23-5711, 2023 WL 9105662 (C.D. Cal. Oct. 12, 2023) .............................16

*Blum v. Amazon.com, Inc.*,
    C25-0977, 2025 WL 3754248 (W.D. Wash. Dec. 29, 2025).......................14, 15

*Branca v. Nordstrom, Inc.*,
    14cv2062, 2015 WL 1841231 (S.D. Cal. Mar. 20, 2015)..................................18

*Bruton v. Gerber Prods. Co.*,
    12-CV-02412, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) .............................18

*Chuang v. Dr. Pepper Snapple Grp.*,
    CV17-01875, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017)...........................10

*Cimoli v. Alacer Corp.*,
    546 F. Supp. 3d 897 (N.D. Cal. 2021)...............................................................19

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ...........................................................................................18

*Clark v. Hershey Co.*,
    C-18-06113, 2019 WL 913603 (N.D. Cal. Feb. 25, 2019) ...............................16

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018)..............................................................................14

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*DeHoog v. Anheuser-Busch InBev SA/NV*,
   899 F.3d 758 (9th Cir. 2018), *cert. denied,* 586 U.S. 1194 (2019) ..................... 19

*Figy v. Frito-Lay N. Am., Inc.*,
   67 F. Supp. 3d 1075 (N.D. Cal. 2014)................................................................. 17

*Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs. (TOC) Inc.*,
   528 U.S. 167 (2000) ............................................................................................. 18

*Gaines v. Valvoline LLC*,
   25-cv-05599, 2025 WL 2978800 (W.D. Wash. Oct. 22, 2025)......................... 13

*Grausz v. Hershey Co.*,
   691 F. Supp. 3d 1178 (S.D. Cal. 2023) .................................................................. 8

*Gray v. Amazon.com, Inc.*,
   653 F. Supp. 3d 847 (W.D. Wash. 2023), *aff'd*, No. 23-035377,
   2024 WL 2206454 (9th Cir. May 16, 2024) ....................................................... 17

*Harris v. McDonald's Corp.*,
   20-cv-06533, 2021 WL 2172833 (N.D. Cal. Mar. 24, 2021) ............................ 16

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
   18-cv-06664, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ............................... 19

*Hilsley v. Gen. Mills, Inc.*,
   376 F. Supp. 3d 1043 (S.D. Cal. 2019) ............................................................... 13

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013), *as amended on denial of reh'g and
   reh'g en banc* (July 8, 2013)............................................................................... 14

*Hu v. Herr Foods, Inc.*,
   251 F. Supp. 3d 813 (E.D. Pa. 2017).............................................................. 9, 10

*Jackson v. Gen. Mills, Inc.*,
   18cv2634, 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020)................................. 19

*Krakauer v. Recreational Equipment, Inc.*,
   C22-5830, 2024 WL 1494489 (W.D. Wash. Mar. 29, 2024) ...................... 14, 15

-iii-

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Kwikset Corp. v. Superior Ct.*,
 51 Cal. 4th 310, 246 P.3d 877 (2011) ...................................................................... 13

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ................................................................................................ 8, 18

*Maghoney v. Dotdash Meredith, Inc.*,
 24-cv-2394, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) (Battaglia,
 J.) ................................................................................................................................ 19

*Maple v. Costco Wholesale Corp.*,
 649 F.App'x 570 (9th Cir. 2016)................................................................................ 18

*Marinkovic v. Lee*,
 22-CV-998, 2025 WL 474917 (S.D. Cal. Feb. 12, 2025)................................... 20

*Maya v. Centex Corp.*,
 658 F.3d 1060 (9th Cir. 2011)..................................................................................... 8

*McGinity v. Procter & Gamble Co.*,
 69 F.4th 1093 (9th Cir. 2023)................................................................................. 7, 9

*McKenna v. WhisperText*,
 5:14-cv-00424, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015)........................... 16

*Moore v. Trader Joe's Co.*,
 4 F.4th 874 (9th Cir. 2021)..................................................................................... 7, 9

*Morgan v. Wallaby Yogurt Co., Inc.*,
 13-cv-00296, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013) ............................... 12

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
 858 F.2d 1376 (9th Cir. 1988)..................................................................................... 8

*Nguyen v. Bank of Am., NA*,
 563 F. App'x 558 (9th Cir. 2014)................................................................................ 10

*Painter v. Blue Diamond Growers*,
 757 F.App'x 517 (9th Cir. 2018)................................................................................ 19

CASE NO. 3:26-CV-00403-AJB-AHG
COSTCO'S MOTION TO DISMISS

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Panag v. Farmers Ins. Co. of Wash.*,
166 Wash. 2d 27 (2009) ...................................................................................... 9

*Pelayo v. Nestle USA, Inc.*,
989 F. Supp. 2d 973 (C.D. Cal. 2013) .............................................................. 12

*Rooney v. Cumberland Packing Corp.*,
12-CV-0033-(H) (DHB), 2012 WL 1512106 (S.D. Cal. Apr. 16,
2012) .................................................................................................................. 12

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ............................................................................ 8

*Souter v. Edgewell Pers. Care Co.*,
542 F. Supp. 3d 1083 (S.D. Cal. 2021) .............................................................. 8

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*,
275 F.3d 1187 (9th Cir. 2001) ..................................................................... 7, 12

*Squeo v. Campbell Soup Co.*,
24-CV-02235-SVK, 2024 WL 4557680 (N.D. Cal. Oct. 22, 2024) ................... 11

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......................................................................... 10

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......................................................................................... 18

*Testone v. Go Macro, LLC*,
25-cv-1743, 2026 WL 948510 (S.D. Cal. Apr. 8, 2026) .................................... 13

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ............................................................................ 8

*Viggiano v. Hansen Nat. Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013) .............................................................. 12

*Young v. Toyota Motor Sales, U.S.A.*,
196 Wash. 2d 310, 472 P.2d 990 (2020) .......................................................... 17

-v-

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Zuchowski v. SFC Global Supply Chain,*
    20-CV-10171, 2022 WL 3586716 (S.D.N.Y. Aug. 22, 2022).......................9, 10

**STATUTES**

Cal. Bus. & Prof. Code § 17204 ....................................................................... 13

Cal. Bus. & Prof. Code § 17535 ....................................................................... 13

Cal. Civ. Code § 1780(a) .................................................................................. 14

**RULES**

Fed. R. Civ. P. 9(b) ..........................................................................2, 8, 16, 17

Fed. R. Civ. P. 12............................................................................................. 1

Fed. R. Civ. P. 12(b)(1) ................................................................................ 8, 19

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 7

**REGULATIONS**

21 C.F.R. § 101.22(a)(5)..................................................................................... 4

21 C.F.R. § 172.620(c) ...................................................................................... 10

21 C.F.R. §§ 182.3013–182.3890......................................................................4, 10

**OTHER AUTHORITIES**

U.S. Const. art. III..................................................................................2, 8, 18, 19

-vi-

## I.    INTRODUCTION

Plaintiffs Bianca Johnston and Anatasia Chernov challenge a single statement—"No Preservatives"—on in-store signage for Costco's popular Kirkland Signature Seasoned Rotisserie Chicken. Their core allegation is that two ingredients in the product's labeled seasoning mix, sodium phosphate and carrageenan, are not seasonings but are instead preservatives, rendering the "No Preservatives" statement false. This theory is fatally flawed. Plaintiffs' own sources contradict it, the regulations of the U.S. Food and Drug Administration ("FDA") discredit it, and the product's label dispels it.

*First*, Plaintiffs cannot state a plausible claim that any "reasonable consumer" would be deceived. The very sources Plaintiffs themselves cite to define "preservatives," including eight online publications and the FDA's regulations, do not identify sodium phosphate or carrageenan among the dozens of preservatives catalogued. Indeed, the FDA specifically classifies carrageenan as an "emulsifier, stabilizer, or thickener," not a preservative. And the Rotisserie Chicken label unambiguously describes these ingredients as components of the product's "seasoning." Plaintiffs' conclusory assertion that these ingredients nonetheless function as preservatives in the product is entitled to no weight under either the "reasonable consumer" standard or basic principles of Rule 12 plausibility.

*Second*, Plaintiffs also fail to allege any cognizable injury. Their "price premium" theory—that the "No Preservatives" statement enabled Costco to charge more—is nothing more than a conclusory allegation contradicted by Plaintiffs' own admissions. Plaintiffs concede that Costco removed the disputed signage after this lawsuit was filed, yet the Rotisserie Chicken's price remains unchanged at its well-

-1-

known $4.99. This admission is fatal: there is no price premium, and there never was one. Without any injury, Plaintiffs' claims under Washington's Consumer Protection Act ("CPA") and California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") necessarily fail.

*Third*, Plaintiffs' fraud-based claims cannot survive Rule 9(b)'s heightened pleading requirements. Plaintiffs have alleged no particularized facts demonstrating that sodium phosphate or carrageenan function as preservatives in this specific product or that the "No Preservatives" statement caused Plaintiffs to pay any price premium.

Although the Amended Complaint fails in full for these reasons, independent aspects of Plaintiffs' allegations are defective for other reasons as well. Any claims predicated on Costco's website must be dismissed outright because neither Plaintiff alleges they visited, relied upon, or even viewed the website before making their in-store purchases. Without reliance, there is no causation and no claim. Plaintiffs also lack Article III standing to seek injunctive relief. Both Plaintiffs now know precisely what ingredients are in the Rotisserie Chicken. To the extent they chose not to do so previously, they can simply read the detailed ingredient label before any future purchase. There is no threat of future deception, and their demand for a "permanent" injunction therefore fails.

For all of these reasons, the Court should grant Costco's Motion and dismiss the Amended Complaint with prejudice.

## II.   FACTUAL BACKGROUND

### A.   Costco sells accurately labeled fully cooked and seasoned chicken.

The sole product at issue in this case is Costco's popular rotisserie chicken:

-2-

CASE NO. 3:26-CV-00403-AJB-AHG
COSTCO'S MOTION TO DISMISS

Kirkland Signature Seasoned Rotisserie Chickens ("Rotisserie Chickens"). *See* Am. Compl., Dkt. 7, ¶ 15. Rotisserie Chicken is sold fully cooked and, as the label indicates, "ready to eat." *See* Declaration of Charles C. Sipos in Support of Defendant Costco Wholesale Corporation's Motion to Dismiss ("Sipos Decl.") Ex. A.

Rotisserie Chicken contains three basic ingredients: whole chicken, water, and a "seasoning" mix. *See id.* The seasoning mix has several sub-ingredients, each of which is identified with specificity on the label and set off with brackets for clarity: "seasoning [salt, sodium phosphate, modified food starch (potato, tapioca), potato dextrin, carrageenan, sugar, dextrose, spice extractives]." *Id.*; *see also* Am. Compl. ¶¶ 41, 86, 132. Because Rotisserie Chicken is a seasoned food, its label prominently states, both front and back, that it is "Seasoned." *See* Sipos Decl. Ex. A.

Rotisserie Chicken is available for purchase at Costco retail warehouses, where there is signage to identify the product. *See* Am. Compl. ¶¶ 17–18. The most prominent element of this signage is the product's $4.99 price. *See id.* As the Amended Complaint otherwise notes, part of the Rotisserie Chicken's popularity and appeal is this "famous" low $4.99 price. *See* Am. Compl. ¶ 45 n.16; *see also id.* ¶¶ 17–18; *see also* Complaint, Dkt. 1, ¶¶ 17–18 (initial complaint alleging same $4.99 price point).

This point-of-sale signage stating the Rotisserie Chicken's price also has, in smaller lettering, seven other statements: "[1] USDA 'A' Grade Chicken; [2] Gluten Free; [3] MSG Free; [4] $1.66 per lb; [5] No Preservatives; [6] No Artificial Flavors; [7] No Artificial Colors." Am. Compl. ¶ 17. It is the fifth of these sub-statements, "No Preservatives," that is the focus of Plaintiffs Johnston and Chernov's claims.

-3-

**B.    Plaintiffs allege the "No Preservatives" statement is false due to the ingredients sodium phosphate and carrageenan.**

Plaintiffs' core theory of deception is that the "No Preservatives" statement on Costco's point-of-sale signage is false and misleading. *See* Am. Compl. ¶¶ 1–21. Specifically, Plaintiffs assert two of the ingredients in the Rotisserie Chicken seasoning mix are, instead, preservatives: [1] sodium phosphate and [2] carrageenan. *See id*. ¶¶ 35–40.

The Amended Complaint defines "preservatives" by reference to two sets of sources: (1) eight online publications discussing "preservatives," and (2) the FDA's regulatory definition of "preservatives," codified at 21 C.F.R. § 101.22(a)(5). *See* Sipos Decl. Exs. B–I (attaching the eight articles the Amended Complaint incorporates by reference, Am. Compl. ¶¶ 28 n.8, 29 n.9).

Notably, the eight publications Plaintiffs rely on to define "preservatives," *see* Am. Compl. ¶¶ 28 n.8, 29 n.9, identify *forty-four* different preservatives. *See* Sipos Decl. Exs. B–I. Yet, sodium phosphate and carrageenan are not listed among the dozens of substances identified. *See id.* Similarly, while Plaintiffs further anchor their definition of "preservatives" to the FDA's definition of that term, *see* Am. Compl. ¶ 30, the agency does not list sodium phosphate or carrageenan among the twenty different substances classified as "chemical preservatives." *See* 21 C.F.R. §§ 182.3013–182.3890. Even though their own pleading thus undermines the conclusion that either carrageenan or sodium phosphate is considered a preservative, Plaintiffs nonetheless allege carrageenan and sodium phosphate function as preservatives. *See* Am. Compl. ¶¶ 36–39.

As to sodium phosphate, Plaintiffs point to an online posting from a Warsaw-

-4-

based pharmacist specializing in herbal medicine, to allege that "sodium phosphate functions as a chemical preservative in foods." *Id*. ¶ 36 n.13 (citing Katarzyna Kimel, *Properties and applications of sodium phosphate*, Natural Poland (May 26, 2022)). This same article points to a host of non-preservative functions for sodium phosphate, as well as non-food -related applications. *See* Sipos Decl. Ex. J (used to regulate pH levels, in water treatment, and as a dietary supplement related to calcium regulation). As to carrageenan, Plaintiffs point to a blog post from a food ingredient sales organization in Uttar Pradesh, India, to assert that "carrageenan is used to preserve food texture and extend shelf life." Am. Compl. ¶ 38 n.15 (citing *Carrageenan: Enhancing Texture and Improving Shelf-Life in Processed Foods*, EasyBuy Ingredients). But once again, the article points to several non-preservative uses. *See* Sipos Decl. Ex. K (gelling, thickening, and stabilizing functions).

Outside of these two sources, the Amended Complaint does not point to any other investigation by Plaintiffs or their counsel to specify how these two ingredients function in the Rotisserie Chicken product itself, where the ingredients are undisputedly labeled as part of a "seasoning." *See* Sipos Decl. Ex. A. In the place of any further inquiry or alleged facts, the Amended Complaint simply conclusorily asserts: "Rotisserie Chicken in fact contains added preservatives." Am. Compl. ¶ 39.

Plaintiffs thus allege that they relied on a "No Preservatives" sub-statement on Costco's in-store signage and that the presence of sodium phosphate and carrageenan renders this statement false or misleading.[1]

---

[1] Plaintiffs also point to an online "No Preservatives" statement appearing in reference to Rotisserie Chicken on Costco's website, but they do not allege they

-5-

**C.**    **Plaintiffs allege the "No Preservatives" statement violates Washington and California consumer protection laws.**

Plaintiffs bring claims on behalf of themselves and a putative class for violation of (1) Washington's CPA, (2) California's CLRA, (3) California's UCL, and (4) California's FAL. *Id.* ¶ 3. Among other remedies, Plaintiffs seek damages and injunctive relief. The CPA claim is asserted on behalf of Plaintiffs and a putative nationwide class. *See id.* ¶¶ 102–111. The California consumer protection claims (CLRA, UCL, and FAL) are asserted on behalf of a putative California subclass. *See id.* ¶¶ 112–140.

Plaintiffs' claimed "injury" is the payment of a supposed "premium" that Costco was able to charge for its Rotisserie Chicken due to the "No Preservatives" statement on the product's in-store signage. *See id.* ¶¶ 107, 130, 136 (alleging the existence of a "premium" attributable to the "No Preservatives" statement). In other words, they allege that Costco's "No Preservatives" statement enabled the company to charge more for Rotisserie Chicken and that this premium is thus part of the product's $4.99 price. *See id.* Plaintiffs maintain this supposed price premium can be identified by "evaluat[ing] the different prices between Costco's Rotisserie Chicken and competitors' products." *Id.* ¶¶ 60, 71. Yet, the Amended Complaint does not identify a single "competitor" who prices a whole rotisserie chicken for sale for less than $4.99.

Moreover, in their Amended Complaint, Plaintiffs point to the fact that since the initiation of this lawsuit on January 22, 2026, Costco elected to remove the

relied on, or even saw, this statement. *See* Am. Compl. ¶¶ 19–20.

-6-

disputed "No Preservatives" claim from its in-store signage "[t]o maintain consistency among the labeling on [its] [R]otisserie [C]hickens." *See* Am. Compl. ¶¶ 45–46, 48. Yet, even after removal of this signage, the price of Costco's Rotisserie Chicken *remains* $4.99. *See id.* ¶ 45 n.16. So, based on admitted facts, Plaintiffs' own pleadings discredit the presence of any "premium" attributable to the "No Preservatives" statement on Costco's in-store signage.

Plaintiffs also seek injunctive relief in the form of a "permanent" ban on the use of the "No Preservatives" statement. *See id.* ¶ 75. Plaintiffs otherwise admit, however, that they are now aware Rotisserie Chicken contains the objected-to ingredients, sodium phosphate and carrageenan. *See id.* ¶¶ 57, 68.

## III.    ARGUMENT

### A.    Legal Standard

#### 1.    Dismissal under Rule 12(b)(6)

"Dismissal of a complaint under Rule 12(b)(6) is appropriate when the [c]omplaint fails to state sufficient facts creating a plausible claim to relief." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 880 (9th Cir. 2021). The plaintiff must show more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Determining plausibility is a "context-specific task" requiring "judicial experience and common sense." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1096 (9th Cir. 2023). A court need not accept legal conclusions couched as factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), nor "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of*

-7-

*reh'g*, 275 F.3d 1187 (9th Cir. 2001).

Finally, where a claim is "grounded in fraud," pleading of the claim must satisfy the heightened pleading standard of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003). "[A] party must state with particularity the circumstances constituting fraud or mistake," meaning that "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Fed. R. Civ. P. 9(b); *Vess*, 317 F.3d at 1103–06.

### 2.      Dismissal under Rule 12(b)(1)

Subject matter jurisdiction must exist when a lawsuit is commenced. *See Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a lawsuit for lack of subject matter jurisdiction when a party does not have Article III standing. *See Souter v. Edgewell Pers. Care Co.*, 542 F. Supp. 3d 1083, 1090 (S.D. Cal. 2021) (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)). A plaintiff has Article III standing when she (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1186 (S.D. Cal. 2023) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* If, even accepting plaintiff's allegations as true, the court finds those allegations insufficient to establish standing, dismissal under Rule 12(b)(1) is required. *See id.*

-8-

## B.    The Amended Complaint does not plausibly allege a "reasonable consumer" would be deceived.

To state a claim under the consumer protection statutes of Washington and California, Plaintiffs must identify conduct deceptive to a "reasonable consumer." *See Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 50 (2009); *McGinity*, 69 F.4th at 1097. This requires showing that the labeling is "likely to mislead" consumers acting reasonably—"not a negligible burden." *Moore*, 4 F.4th at 882.

Therefore, to avoid dismissal, Plaintiffs must plausibly allege that the "No Preservatives" claim is misleading because carrageenan and sodium phosphate function as preservatives in Costco's Rotisserie Chicken. *See Zuchowski v. SFC Global Supply Chain*, 20-CV-10171, 2022 WL 3586716, at *3 (S.D.N.Y. Aug. 22, 2022) (applying same "reasonable consumer" standard to New York consumer protection claims and dismissing challenge to "No Preservatives" claim where plaintiff "does not explain how these [challenged] ingredients operate as preservatives *in Defendant's product*") (emphasis added); *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 822–23 (E.D. Pa. 2017) (holding that plaintiff's allegations that an ingredient functioned as a preservative in other products did not support proposition that the ingredient served as a preservative in defendant's product because these inferences were "arguments and speculations . . . not supported by well-pleaded factual allegations" and a court "need not accept them as true"). The Amended Complaint fails to satisfy that standard.

***First***, the Amended Complaint is tethered to a definition of "preservatives" that discredits the assertion that sodium phosphate and carrageenan are classified as such. Plaintiffs define "preservatives" with reference to online articles and the FDA's

-9-

regulatory definition of that term. *See* Am. Compl. ¶¶ 28–30. Yet, *none* of these sources include either sodium phosphate or carrageenan as any of the dozens of preservatives that are identified. *See* Sipos Decl. Exs. B–I (Plaintiffs' eight cited articles); 21 C.F.R. §§ 182.3013–182.3890 (FDA's regulatory list of preservatives does not include carrageenan or sodium phosphate). The Court need not accept Plaintiffs' conclusory assertion that these ingredients function as preservatives in Costco's Rotisserie Chicken when Plaintiffs' own pleadings contradict that conclusion. *See Nguyen v. Bank of Am., NA*, 563 F. App'x 558, 558 (9th Cir. 2014) (affirming dismissal where certain allegations were contradicted by other sections of the complaint); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[Courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").[2]

**Second**, the sources Plaintiffs rely on to allege a preservative function— commentary from overseas suppliers describing numerous uses including non-food applications do not support any inference that these ingredients preserve *this product*. *See Zuchowski*, 2022 WL 3586716, at *3; *Hu*, 251 F. Supp. 3d at 822–23. The resulting assertion is thus a conclusory allegation unentitled to the presumption of truth. *See Chuang v. Dr. Pepper Snapple Grp.*, CV17-01875, 2017 WL 4286577, at *2 (C.D. Cal. Sept. 20, 2017) ("The Court must disregard allegations that are legal conclusions, even when disguised as facts.") (citing *Iqbal*, 556 U.S. at 681).

---

[2] For carrageenan in particular, the FDA's relevant regulation identifies several specific functions, none of which is preservative-based. *See* 21 C.F.R. § 172.620(c) (listing functions as "emulsifier, stabilizer, or thickener").

-10-

Courts require more than citation to vague third-party blogs to plausibly allege that a particular ingredient functions as a preservative. For example, in *Squeo v. Campbell Soup Co.*, the court concluded that the plaintiffs had plausibly alleged a preservative "function" for citric acid where the complaint cited with specificity: (1) the FDA's classification of citric acid as a preservative; (2) an FDA warning letter identifying citric acid as a preservative; (3) the Encyclopedia Britannica's classification of citric acid as a preservative; (4) the United States Department of Agriculture ("USDA") statement that citric acid provides a preservative function; (5) academic articles specifically identifying citric acid as a preservative; and (6) a patent reference for using citric acid as a preservative. *See* 24-CV-02235-SVK, 2024 WL 4557680, at *6 (N.D. Cal. Oct. 22, 2024) ("Plaintiffs expressly allege that citric acid 'acts as a preservative when added to food products,' a conclusion which they base on, *inter alia*, statements issued by the United States Food and Drug Administration and Department of Agriculture and articles published in academic journals.") (citing eight paragraphs of plaintiff's operative complaint). Here, by contrast, Plaintiffs offer nothing more than inconclusive marketing copy from foreign sales organizations. *See* Am. Compl. ¶¶ 36 n.13, 38 n.15 (citing Warsaw-based pharmacist specializing in herbal medicine and a blog post from a food ingredient sales organization in Uttar Pradesh, India).

Moreover, Plaintiffs *do* otherwise extensively cite academic articles regarding preservatives. *See* Am. Compl. ¶¶ 28 n.8, 29 n.9. It is simply that *none* of these sources identify either carrageenan or sodium phosphate as a preservative, even though these sources otherwise point to *forty-four* different substances that are described as preservatives. *See* Sipos Decl. Exs. B–I. So, here the Amended

-11-

Complaint *undermines* the plausibility of any assertion that carrageenan and sodium phosphate act as preservatives in the Rotisserie Chicken, because the bulk of material that Plaintiffs cite do not even mention them as such. *See Alamilla v. Hain Celestial Group, Inc.*, 30 F.Supp.3d 943, 944 (N.D. Cal. 2014) (dismissing a complaint where "[t]he articles the plaintiff cite ... contradict the allegation upon which their entire complaint hinges"); *accord Sprewell*, 266 F.3d at 988 (a plaintiff can "plead himself out of a claim by including unnecessary details contrary to his claims").

**Third**, the notion that carrageenan and sodium phosphate act as preservatives in the product is refuted by the Rotisserie Chicken label, which describes these ingredients as part of the product's "seasoning." *See* Sipos Decl. Ex. A. Thus, the label further discredits the theory of deception. *See Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 980 (C.D. Cal. 2013) ("[T]o the extent there [wa]s any ambiguity . . . it [wa]s clarified by the detailed information contained in the ingredient list."); *Rooney v. Cumberland Packing Corp.*, 12-CV-0033-(H) (DHB), 2012 WL 1512106, at *4–5 (S.D. Cal. Apr. 16, 2012) (no reasonable consumer could be deceived by the label "Sugar in the Raw" because the package stated in several places that the sugar was turbinado sugar (a processed sugar)); *Morgan v. Wallaby Yogurt Co., Inc.*, 13-cv-00296, 2013 WL 5514563, at *8 (N.D. Cal. Oct. 4, 2013) (claims that plaintiffs would not have purchased the products if they had known the products contained sugar or dried cane syrup "[are] contradicted by the fact that the plaintiffs nonetheless purchased the products despite the fact that the sugar content is listed right next to the ingredients list, as the images in their Complaint reflect"); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 889–93 (C.D. Cal. 2013) (no reasonable consumer could be misled where statement of ingredients makes

-12-

product's composition clear).

While complaints have survived motions to dismiss where plaintiffs provided adequate factual support for an ingredient's contested function, Plaintiffs have not done so here. *See Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1049 (S.D. Cal. 2019) (flavoring function for ingredient plausibly alleged given FDA's regulatory classification system identifying flavoring as potential usage). Here, Plaintiffs' allegations fall on the implausible side of the line. Plaintiffs' own sources do not identify sodium phosphate or carrageenan as preservatives, FDA regulations do not classify them as such, and the product label describes these ingredients as "seasoning." Considering the Amended Complaint "as a whole," as the law requires, there are no plausible grounds for deception. *See Testone v. Go Macro, LLC*, 25-cv-1743, 2026 WL 948510, at *6 (S.D. Cal. Apr. 8, 2026) (review of the labels "as a whole" along with consumer ability to "read and understand" the label compelled dismissal due to lack of plausibly alleged deception).

**C.    The Amended Complaint does not plausibly allege that Plaintiffs paid any cognizable "price premium."**

Plaintiffs' CPA cause of action requires them to plead an adequate "injury," which requires an allegation of harm to their "business or property." *Gaines v. Valvoline LLC*, 25-cv-05599, 2025 WL 2978800, at *4 (W.D. Wash. Oct. 22, 2025). Plaintiffs' UCL, FAL, and CLRA claims likewise have injury as an essential element. For the UCL and FAL, a plaintiff must have sustained an economic injury in the form of "lost money or property." Cal. Bus. & Prof. Code § 17204 (UCL); Cal. Bus. & Prof. Code § 17535 (FAL); *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320–21, 246 P.3d 877 (2011) (standing requirements under the FAL and UCL are the

-13-

same). "To properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she 'would not have purchased the goods in question absent this misrepresentation.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018) (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013)). For CLRA statutory standing, a plaintiff likewise must have suffered "damage" because of the challenged conduct. Cal. Civ. Code § 1780(a); *see also Hinojos*, 718 F.3d at 1108.

Plaintiffs' articulated theory of harm is that they paid a "price premium" for Rotisserie Chicken attributable to the "No Preservatives" statement. *See* Am. Compl. ¶¶ 107, 130, 136. These conclusory allegations fail under a consistent body of consumer protection law. Indeed, with the filing of their Amended Complaint, Plaintiffs have now functionally admitted, as is true, that there is *no* price premium associated with the "No Preservatives" claim and there never was.

**First**, Plaintiffs fail to state a CPA claim because their allegations are conclusory. Under CPA case law, a party claiming economic injury must allege "(1) which alternative, cheaper products she would have purchased, or (2) that she spent time or money acquiring alternative products." *Blum v. Amazon.com, Inc.*, C25-0977, 2025 WL 3754248, at *3 (W.D. Wash. Dec. 29, 2025); *accord Krakauer v. Recreational Equipment, Inc.*, C22-5830, 2024 WL 1494489, at *7 (W.D. Wash. Mar. 29, 2024) (dismissing CPA claim premised on price premium theory where complaint contained only "bald assertion that [plaintiff] would have paid less or not purchased the raincoat . . . unaccompanied by facts showing what cheaper alternative

-14-

CASE NO. 3:26-CV-00403-AJB-AHG
COSTCO'S MOTION TO DISMISS

products he might have purchased").

Plaintiffs *do not* allege the market presence of any "alternative, cheaper products" they would have purchased instead of Rotisserie Chicken. *See Blum*, 2025 WL 3754248, at *3. The Amended Complaint is utterly silent as to the market presence of cheaper alternatives, even though Plaintiffs otherwise claim a capacity to perform this kind of price comparison. *See* Am. Compl. ¶¶ 60, 71 (asserting Plaintiffs would, in the future, look to "evaluate the different prices" between Rotisserie Chicken and unidentified lower-priced options). Instead of alleging the required market comparable facts, the Amended Complaint contains the kind of "bald assertion" about the existence of economic harm that CPA case law squarely rejects as insufficient to state a claim. *Compare Krakauer*, 2024 WL 1494489, at *7 (rejecting as legally inadequate to state a CPA injury the allegation that "[h]ad Defendant disclosed the presence of PFAS in the Products' labeling, then Plaintiff would not have purchased the Products, or would have paid less for them than he did.") *with* Am. Compl. ¶ 108 ("Plaintiffs and the Nationwide Class would not have purchased the Rotisserie Chicken, or would have paid significantly less for it, had they known the truth about the presence and preservative function of certain of its added ingredients[.]").

**Second**, Plaintiffs' successive pleadings fatally undermine any price premium theory. The initial Complaint alleged that Rotisserie Chicken costs $4.99 and identified no cheaper alternative. *See* Compl. ¶¶ 17–18. The Amended Complaint acknowledges that Costco removed the "No Preservatives" signage—yet admits the price *remains* $4.99. *See* Am. Compl. ¶ 45 n.16; *see also id.* ¶¶ 45–46. This admission demonstrates there *is* no price premium: the Rotisserie Chicken is the *same*

-15-

*price* regardless of whether the "No Preservatives" statement appears. The Court's "context-specific" inquiry under *Iqbal* permits comparison of prior pleadings against the operative complaint. *See McKenna v. WhisperText*, 5:14-cv-00424, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015). Here, the two complaints read together demonstrate that the price premium theory is fiction.

*Third*, Plaintiffs' UCL, FAL, and CLRA claims suffer the same defect. Mere recitation of "premium" is insufficient; a plaintiff must allege specific facts such as prices paid and prices that would have been paid absent the deception. *See Babaian v. Dunkin' Brands Grp., Inc.*, LACV 17-4890, 2018 WL 11445614, at *8 (C.D. Cal. Feb. 16, 2018); *Blackburn v. Etsy, Inc.*, CV 23-5711, 2023 WL 9105662, at *4 (C.D. Cal. Oct. 12, 2023); *Harris v. McDonald's Corp.*, 20-cv-06533, 2021 WL 2172833, at *2 (N.D. Cal. Mar. 24, 2021). Plaintiffs allege no such facts, and the record confirms no premium exists—the removal of the contested signage left the price unchanged at $4.99. Plaintiffs' California consumer protection claims thus suffer from the same fatal infirmity as their CPA claim; they do not allege *any* facts to substantiate the existence of a so-called premium. *See* Am. Compl. ¶¶ 120, 130, 136. And the full proceedings in this litigation fatally undermine that premium's existence, because the removal of the contested claim left Rotisserie Chicken's price at a static $4.99.

### D.    Plaintiffs' allegations fail to satisfy the heightened pleading standards of Rule 9(b).

Even if Plaintiffs' claims were plausible under *Twombly* and *Iqbal*, they fail under Rule 9(b)'s heightened standard, which applies to the CPA, CLRA, UCL, and FAL. *See Clark v. Hershey Co.*, C-18-06113, 2019 WL 913603, at *4 (N.D. Cal. Feb.

-16-

25, 2019); *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 858 (W.D. Wash. 2023), *aff'd*, No. 23-035377, 2024 WL 2206454 (9th Cir. May 16, 2024). Rule 9(b) requires Plaintiffs to allege the "who, what, when, where, and how" of the alleged fraud with particularity. *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1081 (N.D. Cal. 2014). Plaintiffs plead no particularized facts showing that sodium phosphate and carrageenan function as preservatives in the Rotisserie Chicken, or that the "No Preservatives" statement generated any real price premium—they make only conclusory assertions. *See* Am. Compl. ¶¶ 81–82.

Although Plaintiffs allege they were misled by signs representing that Rotisserie Chickens contained no preservatives, Plaintiffs do not plead sufficient facts to support the conclusion that either sodium phosphate or carrageenan functions as a preservative in Rotisserie Chickens. Nor do they allege that the presence of the "No Preservatives" sign generated any real price premium. The Amended Complaint, in purporting to satisfy Rule 9(b), just repeats the same conclusory allegations offered elsewhere. *See* Am. Compl. ¶ 81 (conclusory allegation that sodium phosphate and carrageenan "function as preservatives and [reasonable consumers] would not expect that the Rotisserie Chicken in fact contained added preservatives"); *id.* ¶ 82 (claiming Plaintiffs "would not have purchased" Rotisserie Chicken but otherwise alleging no economic harm).

**E.      The Amended Complaint's references to Costco's website should be dismissed based on lack of causation or reliance.**

Washington CPA claims based on misrepresentations require plaintiffs to plead facts showing reliance and causation. *See Young v. Toyota Motor Sales, U.S.A.*, 196 Wash. 2d 310, 322, 472 P.2d 990, 996–97 (2020). Similarly, the UCL, CLRA,

-17-

and FAL require allegations of reliance to establish standing. *See Bruton v. Gerber Prods. Co.*, 12-CV-02412, 2014 WL 172111, at *6 (N.D. Cal. Jan. 15, 2014).

The Amended Complaint repeatedly references Costco's website, *see* Am. Compl. ¶¶ 15, 16, 19, 20, 42, 46, 48, 75, 79, 80, 85, but neither Plaintiff alleges having visited or relied on the website before purchasing—both allege in-store purchases based on in-store signs. *See id.* ¶¶ 52–53, 63–64. Claims based on website statements must therefore be dismissed. *See Maple v. Costco Wholesale Corp.*, 649 F.App'x 570, 572 (9th Cir. 2016) (affirming dismissal where plaintiff did not allege reading the challenged label); *Branca v. Nordstrom, Inc.*, 14cv2062, 2015 WL 1841231, at *4 (S.D. Cal. Mar. 20, 2015) (dismissing claims where plaintiff alleged no facts showing awareness of website representations).

**F.    Plaintiffs do not have Article III standing to seek injunctive relief because they are unlikely to be misled in the future.**

Finally, Plaintiffs do not have Article III standing to pursue their claims for injunctive relief. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000). To establish Article III standing for injunctive relief, a plaintiff must prove that the threatened injury is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). A possible or even likely injury is insufficient; rather, the "threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013) (quotations omitted). The imminence requirement "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes[.]" *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 565 n.2); *see also*

-18-

*Maghoney v. Dotdash Meredith, Inc.*, 24-cv-2394, 2026 WL 497402, at \*6 (S.D. Cal. Feb. 23, 2026) (Battaglia, J.) (finding that plaintiff lacked Article III standing because she "merely allege[d] a speculative future risk" of harm).

In mislabeling class actions, courts dismiss claims for injunctive relief where the plaintiff could "easily discover whether a previous misrepresentation had been cured" before purchasing again. *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021); *see also Jackson v. Gen. Mills, Inc.*, 18cv2634, 2020 WL 5106652, at \*5 (S.D. Cal. Aug. 28, 2020).

Both Plaintiffs admit that, after purchasing Rotisserie Chickens, they "learned that the ingredients include the two [alleged] added preservatives, sodium phosphate and carrageenan." Am. Compl. ¶¶ 57, 68. Because Plaintiffs are now aware of these ingredients, they can review the ingredient list before any future purchase. *See Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 18-cv-06664, 2020 WL 5910071, at \*8 (N.D. Cal. Oct. 6, 2020).

Plaintiffs therefore lack Article III standing to seek injunctive relief. *See Maghoney*, 2026 WL 497402, at \*4 ("In the absence of standing, there is no subject matter jurisdiction."). Plaintiffs' claims for injunctive relief under the CPA, CLRA, UCL, and FAL should therefore be dismissed under Rule 12(b)(1).

**G.    The Amended Complaint should be dismissed with prejudice.**

Plaintiffs' First Amended Complaint should be dismissed with prejudice. A complaint should be dismissed with prejudice when repleading would be futile. *See DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765–66 (9th Cir. 2018), *cert. denied,* 586 U.S. 1194 (2019); *see also Painter v. Blue Diamond Growers*, 757 F.App'x 517, 519–20 (9th Cir. 2018) (finding amendment would be futile where no

-19-

amendment "could improve the plausibility of the consumer confusion allegations [plaintiff] asserts").

Here, amendment is futile because Plaintiffs cannot change the facts to salvage their claims. Rotisserie Chicken is sold at the same price regardless of the "No Preservatives" statement; and the ingredients at issue, sodium phosphate and carrageenan, function as seasonings. Moreover, this is Plaintiffs' second successive pleading. A court is not required to countenance or allow multiple pleadings where prior efforts were inadequate to state a claim for relief. *See Marinkovic v. Lee*, 22-CV-998, 2025 WL 474917, at *7 (S.D. Cal. Feb. 12, 2025) (court has particularly wide latitude to dismiss with prejudice where prior amendments allowed). Dismissal with prejudice is therefore appropriate.

## IV. CONCLUSION

For the foregoing reasons, Costco respectfully requests that the Court grant its Motion and dismiss Plaintiffs' First Amended Class Action Complaint with prejudice.

Dated:  June 4, 2026                              **PERKINS COIE LLP**

By: */s/ Charles C. Sipos*
    Charles C. Sipos

Attorney for Defendant
Costco Wholesale Corporation

-20-